## RAHN *v.* HULL.

There was no abuse of discretion in refusing to remove the attachment on the petition of the defendant in the attachment proceeding.

August 20, 1894.

Attachment. Before Judge FALLIGANT. Effingham county. December 9, 1893.

Rahn, who was indebted to Hull $337.45, sold his stock of goods in Guyton to Weitman & Griner on October 20, 1893. On October 31, Hull presented a petition for an attachment against Rahn, alleging that the stock of goods was liable for the payment of his debts, and that he had conveyed the same for the purpose of avoiding their payment. The attachment was issued and levied on the stock of goods; and Rahn brought his petition for the removal of the attachment. Upon the hearing this was denied, and Rahn excepted. He introduced three affidavits, to wit: (1) By himself: Before the sale he made an inventory of all the goods he had in stock, and they amounted in value to $317, that being their full value and being the amount received from Weitman & Griner for the same. On the same day he sold the goods, he rented to them the storehouse in which the goods were located, and they then and there took possession of the storehouse and goods and opened a mercantile business. He at once notified Hull that he

had made a sale of his entire stock, and as soon as he could arrange to do so, he would pay him the amount he then owed him. A few days afterwards Hull called upon him at Guyton, and they had a conversation as to the disposition he had made of his stock, during which he stated to Hull that he was involved in liability upon the bond of D. G. Morgan; but at no time stated to Hull that he made a sale of his goods to avoid liability on that bond nor to avoid any other liability. Deponent sold the goods to Weitman & Griner in good faith, and there was no trust for himself or any person appointed by him. The reason he made the sale was to pay a debt of $300 that he then owed Miss Cornelia Dasher, and in the conversation he had with her in reference to the sale he made the same statement. (2) By Weitman & Griner: Before they bought the goods, Weitman with Rahn went through the stock and made a complete inventory of all the goods, and they amounted at cost price to $317, which deponents then and there paid, $17 in cash and the balance by giving Miss Dasher six promissory notes of $50 each, due every third month thereafter. Weitman inquired of Rahn whether there was any outstanding lien that could come against the goods, and Rahn assured him there was none. They bought the goods in good faith and without notice that Rahn owed a dollar; and if there was any intention on the part of Rahn to defraud his creditors, it was unknown to Weitman. On the same day they bought from others a large quantity of goods, placed them in the store with the goods purchased from Rahn, opened a mercantile business and operated it until November 2, 1893, when the attachment was levied upon their entire stock and their store closed, causing large damage. (3) By Miss Dasher: Rahn owed her $300 for money borrowed from her about September, 1892, which amount was due. She was advised and believed that he was largely

indebted and his property liable to be seized at any time for the payment of his debts. She had no security for the $300, save the naked promise of Rahn that he would pay the same. After being informed that Rahn was financially embarrassed, she called upon him to pay her the $300. He told her he had no money but could and would sell his stock of goods to the firm of Weitman & Griner, and would make the notes that he got for the stock payable to her for the purpose of securing to her the payment of the $300. She received the notes as stated in Weitman's affidavit, and she accepted them as the payment of the $300 then due her by Rahn, in good faith and not through fraud or collusion with him.

Hull made affidavit: October 28, 1893, he went to Guyton to see Rahn for the purpose of collecting the debt for which the attachment was sued out. Rahn then stated to him that he was one of the bondsmen of Morgan, that suit was about to be brought against Morgan and his bondsmen, and that Rahn apprehended that a judgment would be obtained against him as such bondsman, and for this reason had conveyed his stock of goods in Guyton to Griner & Weitman for a stated consideraton of $317, that only $17 had been actually paid, and he had been careful to have the notes given by them for the remaining $300 made payable to the order of Miss Dasher so they could not be reached. Deponent stated to Rahn that as there was no consideration for the notes passing from the payee, deponent thought his creditors could reach them and subject them to the payment of his debts; to which Rahn replied he could fix that by buying something from Miss Dasher. He offered then and there to have the notes transferred to deponent as collateral security for the debt which he owed deponent. Deponent declined to accept the offer, being convinced that the pretended sale to Weitman & Griner conveyed no title and learning that Griner was

a minor. Rahn stated to deponent that he then had the notes for $300 in his possession.

Weitman was present in court at the hearing.

R. W. SHEPPARD, for plaintiff in error.

A. C. WRIGHT, contra.

LUMPKIN, Justice.

This was a petition for the removal of an attachment which had issued and been levied under the law providing for attachments against fraudulent debtors. No question of law is involved. The sole question for our determination is whether or not the circuit judge abused his discretion in refusing to remove the attachment. This depends entirely upon the evidence, a condensed statement of which appears in the official report. An examination of it will show that the conclusion reached by the judge was fully warranted. *Judgment affirmed.*